**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ALLSTATE LIFE INSURANCE** | § | **PLAINTIFF** |
| **COMPANY, SUCCESSOR IN INTEREST** | § | |
| **TO GLENBROOK LIFE AND ANNUITY** | § | |
| **COMPANY** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:05CV164-LG-JMR** |
| | § | |
| **THE ESTATE OF CHARLES THOMAS** | § | |
| **REED, ET AL.** | § | **DEFENDANTS** |

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER COMES BEFORE THE COURT on the Motion for Summary Judgment

[90] filed by the plaintiff, Allstate Life Insurance Company as Successor in Interest to

Glenbrook Life and Annuity Company ("Allstate"), Allstate's Motion to Exclude the Proposed

Expert Testimony of George B. Pickett [94], the Motion for Summary Judgment [92] filed by

Virginia Parnell, Individually and as Executrix of the Estate of Charles Thomas Reed ("Parnell"),

the Motion for Summary Judgment [127] filed by Ralph Marshall ("Ralph"), and the Motion for

Summary Judgment [139] filed by Suzuko Marshall ("Suzuko").  After due consideration of the

parties' submissions and the relevant law, it is the Court's opinion that Allstate is entitled to

judgment as a matter of law, but Parnell, Suzuko Marshall, and Ralph Marshall are not entitled to

judgment as a matter of law since genuine issues of material fact remain as to whether the parties

exerted undue influence over Charles Thomas Reed.  The Court further finds that Allstate's

Motion to exclude Proposed Expert Testimony should be denied as moot.

**FACTS AND PROCEDURAL HISTORY:**

Charles Thomas Reed ("Reed") resided at the Armed Forces Retirement Home in Gulfport, Mississippi, from 1993 until his death at the age of 75 on January 28, 2004.  Reed had five children, including the defendants, Parnell and John Reed.  The defendant, Ralph, became chief of operations at the Retirement Home in 2001, and his wife, Suzuko, volunteered in the Retirement Home's greenhouse.  Ralph and Suzuko met Reed at the Retirement Home and became close friends.  Reed became interested in Suzuko's Buddhist faith, and eventually was converted, attending regular Buddhist gatherings with Ralph and Suzuko.

In June of 2003, when Reed was diagnosed with terminal lung cancer, Suzuko and Ralph began accompanying Reed to medical appointments and assisted him in picking up medications and running other errands.  In June or July of 2003, Reed informed Linda Helwick, an employee of the Hancock Bank[1] branch that was located at the Retirement Home, that he was concerned about the stock market and gold market in which he had invested and that he wanted to consider an investment that would provide fixed rates.  (Helwick Dep. at p. 53).  As a result, Helwick scheduled an appointment for Reed to return and discuss his investment options.  (Helwick Dep. at p. 53).  On June 30, 2003, Reed withdrew all of the money that was held in his IRA and deposited the funds into his bank account.

Prior to July 15, 2003, Reed met with Helwick and her supervisor, Linda Madden, and they discussed his investment options, including the prospect of purchasing an annuity.  Reed met with Helwick and Madden again on July 15, 2003, in order to further discuss his options.

---

[1]Hancock Bank is an affiliate of Hancock Investment Services, Inc., which was Allstate's broker at the time of the transaction.

On July 31, 2003, he filled out an annuity application with Helwick's assistance.  (Helwick Dep. at pp. 39-40, 55-56).  The area of the application concerning beneficiaries was initially left blank, because Reed informed Helwick that he wanted Suzuko to be the beneficiary, but he did not know how to spell her name.  On August 1, 2003, Reed purchased a $240,000 annuity from Allstate, naming Suzuko as primary beneficiary and Ralph as contingent beneficiary.  (Ex. 2 to Allstate's Motion).

In approximately August of 2003, Ralph alleges that Reed asked him to keep his coin collection in his garage.  (Ralph Dep. at 36-37).  Ralph also testified that Reed asked him to sell the coins, and give the money that was gained from the sale to Suzuko.  (Ralph Dep. at 38-39).  Ralph sold the coins for a total of $12,000.  The funds were later donated in the name of Ralph and Suzuko Marshall to a dog rescue and a Buddhist college, and Ralph and Suzuko took a tax deduction as a result of the donations.

In January of 2004, Parnell asserts that she was notified by the Retirement Home that Reed was in the hospital at Keesler Medical Center, and that she should come to Gulfport to handle his affairs and pick up a power of attorney that had been prepared by a local attorney on Reed's behalf.  (Ex. R to Parnell's Response at p. 60).  She obtained the power of attorney on January 23, 2004.   Parnell found the Allstate annuity while cleaning out her father's room at the Retirement Home, and discovered that Suzuko was the designated beneficiary.  Parnell then met with Helwick, showed her the Power of Attorney, and requested a change of beneficiary form. Helwick would not provide Parnell with a form, but Parnell obtained one from another Allstate agent.

Reed passed away on January 28, 2004.  That same day, Allstate received a faxed change

of beneficiary form designating John Reed and Parnell as equal beneficiaries of the proceeds of

the annuity.  Parnell alleges that Reed signed the form hours before his death.  (Ex. 5 to Allstate's

Motion at 82-83).  On June 29, 2004, Allstate received a claim form from Suzuko requesting a

deferral of payment of the annuity.  Ralph sought an ethics opinion regarding Suzuko's

acceptance of the funds after Reed's' death.[2]  On December 12, 2004, Parnell submitted a claim

to Allstate requesting a lump sum payment of the annuity.  Ten days later, Parnell filed a

consumer complaint with the Mississippi Department of Insurance, asserting that the annuity

should be rescinded due to her father's poor mental health.

As a result of the competing claims to the annuity proceeds, Allstate filed this

interpleader action against Parnell, John Reed, the Estate of Charles Thomas Reed, and Suzuko

seeking a determination as to which party is entitled to the proceeds of the annuity purchased by

Reed prior to his death.  Ralph was later joined as a necessary party and potential claimant to the

interpled funds.  Parnell filed a Counterclaim against Allstate, alleging claims of breach of

fiduciary duty, fraud/fraudulent inducement, conspiracy, unjust enrichment, elder

abuse/exploitation, and unfair/deceptive trade practices, and seeking rescission of the annuity

purchase.  Parnell also filed cross-claims against Suzuko and Ralph, alleging claims of breach of

fiduciary duty/undue influence, fraud/fraudulent inducement, civil conspiracy, and elder

abuse/exploitation.  Suzuko and Ralph also filed the following cross-claims against Parnell:

fraud, misrepresentation, duress, and/or undue influence, abuse of process, intentional infliction

of emotional distress/harassment, and breach of duties of one serving as executor or

---

[2] In 2003, the Armed Forces Retirement Home prohibited employees from accepting gifts from
residents of the Home.  An investigation of the circumstances surrounding Reed's purchase of the
annuity was conducted, but it is unclear whether a formal ethics opinion was ever rendered.

administrator of an estate.  Parnell filed a Motion for Default Judgment against John Reed due to his failure to respond to Allstate's Interpleader Complaint, and the Court granted that Motion.

Allstate has filed a Motion for Summary Judgment as to the Counterclaim asserted by Parnell.  Parnell has filed a Motion for Summary Judgment seeking a determination that she is entitled to the proceeds of the annuity purchased by Reed.  Suzuko and Ralph have filed Motions for Summary Judgment as to the Cross-claims filed against them by Parnell and seeking a determination that Suzuko is entitled to the annuity funds.

## LAW AND ANALYSIS:

A Motion for Summary Judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).   A "material fact" is one that might affect the outcome of the suit under the governing law, and a dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The evidence should be viewed in the light most favorable to the non-movant, and the party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986).  Furthermore, "when a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## I.  ALLSTATE'S MOTION FOR SUMMARY JUDGMENT:

Parnell filed a Counterclaim against Allstate, asserting the following claims: breach of fiduciary duty, fraud/fraudulent inducement, conspiracy, unjust enrichment, elder abuse/exploitation, and unfair/deceptive trade practices.  Specifically, Parnell alleges that the annuity was not a suitable investment for Reed due to his age and health, and that Allstate should have informed Reed that the annuity may not leave sufficient liquid assets for his living expenses and would have led to significant tax liability since the annuity was partially funded by the withdrawal of funds from Reed's IRA.  As a result, Parnell seeks rescission of the annuity contract at issue, injunctive relief, punitive damages, and attorney's fees.  (Counterclaim at pp. 16-17).

## A.  PARNELL'S DEMAND FOR RESCISSION:

"A 'rescission' amounts to the unmaking of a contract, or an undoing of it from the beginning, and not merely a termination . . . ."  *Cenac v. Murry*, 609 So. 2d 1257, 1273 (Miss. 1992)(quoting BLACK'S LAW DICTIONARY 1174 (5th ed. 1979).  Under Mississippi law, rescission is only allowed in instances of fraud, mistake, or material breach of contract.  *Cenac*, 609 So. 2d at 1273.  Parnell has not alleged mistake or breach of contract.  Therefore, it is only necessary for the Court to address the fraud claim.

In order to assert a fraud claim, the following elements must be proven by clear and convincing evidence:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) reliance on its truth; (8) right to rely thereon; and (9) consequent and proximate injury.

*GMAC v. Baymon*, 732 So. 2d 262, 269-70 (Miss. 1999).  In support of her fraud claim, Parnell asserts that Helwick, the Hancock bank agent, initially spoke with Reed about an annuity paying seven percent interest, but when he returned on July 15, 2003, after considering the type of investment that he wanted, she informed him that the seven percent annuity was no longer available and offered him the four percent annuity at issue.  (Parnell's Mem. Br. at 20).

Parnell argues that Allstate admitted in its discovery responses that the seven percent investment was in fact available.  (Ex. H to Parnell's Response).  However, Allstate's discovery responses admit that the seven percent annuity was available on August 5, 2003, not the date on which Helwick spoke with Reed or the date on which Reed purchased the annuity.  Furthermore, Parnell has failed in making any attempt to demonstrate the remaining elements of fraud.

When the party opposing summary judgment bears the burden of proof at trial, that party has the burden of demonstrating by competent summary judgment proof that there is a genuine issue of material fact in order to avoid the imposition of summary judgment.  *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)(citing *Celotrex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In the present suit, Parnell has the burden of demonstrating fraudulent conduct by Allstate by clear and convincing evidence; however she has not set forth any evidence in support of a fraud claim against Allstate.  Since Parnell cannot make a *prima facie* case of fraud, she is not entitled to rescission of the annuity contract.[3]

---

[3]Allstate has also filed a Motion to Exclude the Proposed Expert Testimony of George B. Pickett [94], who opined that the annuity was not a suitable investment for Reed, and opined that Allstate owed certain duties to Reed.  Since the proposed expert testimony of Mr. Pickett was not relied upon by Parnell in opposition to the Motion for Summary Judgment, and since the proposed testimony of Mr. Pickett would not create a genuine issue of material fact as to whether Parnell is entitled to rescission or any other relief demanded, the Motion to Exclude is denied as moot.

**B.  OTHER RELIEF DEMANDED BY PARNELL AND THE ESTATE:**

Parnell also seeks to enjoin Allstate from committing similar acts against other individuals and to require Allstate to disclose all past and future sales of annuities to the Armed Forces Retirement Home.  Reed is deceased and therefore cannot benefit from such an injunction.  Furthermore, Parnell does not have standing to assert these claims on behalf of other residents of the Armed Forces Retirement Home[4] or other elderly individuals.  *Ward v. Santa Fe Independent School District*, 393 F.3d 599, 606 (5th Cir. 2004)(explaining that a litigant cannot assert the legal rights or interests of third parties).  Therefore, Parnell's requests for injunctive relief must fail as a matter of law.  *See* U.S. CONST. art. III, §2, cl. 1 (providing that the federal judicial power shall only extend to actual "cases or controversies"); *Ward*, 393 F.3d at 606 (holding that the litigant must establish that she has suffered an injury in fact in order to demonstrate the existence of an actual case of controversy).

Parnell also demands punitive damages and attorney's fees.  However, pursuant to Mississippi law, punitive damages cannot be awarded in the absence of any award of actual damages.  *Temple-Inland Mortgage Corp. v. Jones*, 749 So. 2d 1161, 1169 (Miss. Ct. App. 1999).  Furthermore, attorney's fees ordinarily should not be awarded in the absence of an award of punitive damages, or a contractual provision or statutory authority permitting such an award. *Sports Page Inc. v. Punzo*, 900 Sp. 2d 1193, 1203-04 (Miss. Ct. App. 2004).  Therefore, the Court finds that Parnell is not entitled to an award of punitive damages or attorney's fees against Allstate.

---

[4]The Court further notes that the Armed Forces Retirement Home was damaged by Hurricane Katrina, and the Home has not been operational since the storm struck the Gulf Coast on August 29, 2005.

## II.  THE DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT:

Parnell has filed a Motion for Summary Judgment, arguing that if this Court finds that the annuity should not be rescinded, the Estate is the proper beneficiary of the proceeds of the annuity as a result of alleged violations of federal ethics laws and alleged undue influence exerted by Suzuko and Ralph.  Suzuko has filed a Motion for Summary Judgment seeking a determination that she is entitled to the proceeds of the annuity, and seeking dismissal of Parnell's cross-claims.  Ralph has filed a Motion for Summary Judgment seeking dismissal of Parnell's cross-claims.

## A.  WHETHER PARNELL IS ENTITLED TO THE PROCEEDS OF THE ANNUITY PURSUANT TO FEDERAL ETHICS LAWS:

Parnell alleges that Suzuko's acceptance of the proceeds of the sale of Reed's coin collection and any acceptance of the proceeds of the annuity would constitute violations of the Standards of Ethical Conduct of Employees of the Executive Branch, since Suzuko was a volunteer at the Armed Forces Retirement Home and her husband, Ralph, was a Director at the Home.  However, these ethical regulations do not create a private right of action, such that Parnell is not entitled to any relief pursuant to these regulations.  *See Scherer v. U.S.*, 241 F. Supp. 2d 1270, 1285 (D. Kan. 2003); 5 C.F.R. §2635.106(c)("A violation of this part or of supplemental agency regulations, as such, does not create any right or benefit, substantive or procedural, enforceable at law by any person against the United States, its agencies, its officers or employees, or any other person.")

**B.  WHETHER REED LACKED MENTAL CAPACITY TO PURCHASE THE ANNUITY:**

The party seeking to set aside a donation must demonstrate that the grantor lacked mental capacity at the time of execution by clear and convincing evidence.  *In re Conservatorship of Cook*, 937 So. 2d 467, 470 (Miss. Ct. App. 2006).  The relevant inquiry is "whether the grantor understands and appreciates the nature of his act, the natural objects or persons of his bounty and their relation to him, and is capable of determining how he desires to devise and bequeath his property."  *Whitworth v. Kines*, 604 So. 2d 225, 228 (Miss. 1992).  The annuity was purchased on August 1, 2003.  Parnell relies upon a medical record dated July 3, 2003, that stated that he was confused as to time of day; a medical record dated July 16, 2003, in which he was diagnosed with "dementia"; testimony from Suzuko and Ralph that Reed began to get weaker after being diagnosed with cancer; and medical records[5] dated after the purchase of the annuity in support of her argument that Reed lacked mental capacity.  Curiously, Parnell has submitted an affidavit signed by the attorney that prepared the Power of Attorney in favor of Parnell and her brother that provides that Reed was competent to execute the Power of Attorney well after the purchase of the annuity and only eight days prior to his death on January 20, 2004.  (Ex. V to Parnell's Motion).  Additionally, the uncontradicted testimony of the Hancock Bank employees indicates that Reed considered whether to purchase the annuity for over one month, he asked intelligent questions regarding his investment options, and he repeatedly asserted that he wanted Suzuko to be the beneficiary of the annuity.  (Helwick Dep. at 5-8, 27, 79; Madden Dep. at 13).  As a result, the conflicting evidence submitted by Parnell does not demonstrate that Reed lacked the mental

---

[5]On September 16, 2003, a neurological exam was performed on Reed, and he was diagnosed with mild to moderate dementia.  (Ex. J to Parnell's Motion).

capacity to purchase the annuity on August 1, 2003.

## C.  WHETHER PARNELL'S CLAIMS CONCERNING THE COIN COLLECTION SHOULD BE DISMISSED:

Ralph and Suzuko argue that Parnell's cross-claims regarding Reed's alleged donation of his coin collection to Suzuko should be dismissed because Parnell did not seek leave of court before amending her cross-claim against Suzuko to add the claim concerning the coin collection. They further contend that the cross-claim against Ralph exceeded the scope of the amendment that was allowed by the Court.  Additionally, Ralph and Suzuko argue that this Court does not have jurisdiction over the cross-claims concerning the coin collection.

Parnell claims that she was not aware that Suzuko and Ralph had possession of the coin collection until after this lawsuit was filed.  FED. R. CIV. P. 15 provides that leave to amend should be freely granted when justice so requires.  In the interest of judicial economy, the Court will accept Parnell's amended cross-claim as filed, and will not require her to seek leave of court before considering her claims.  Furthermore, the Court finds that it has supplemental jurisdiction over the cross-claims concerning the coin collection pursuant to 28 U.S.C. §1367[6].

## D.  WHETHER SUZUKO AND/OR RALPH EXERTED UNDUE INFLUENCE OVER REED IN ORDER TO OBTAIN POSSESSION OF THE PROCEEDS OF THE ANNUITY AND REED'S COIN COLLECTION:

If a confidential relationship exists among the parties to an *inter vivos* transaction, a rebuttable presumption of undue influence arises automatically.  *Lancaster v. Boyd*, 927 So. 2d 756, 759 (Miss. Ct. App. 2005).  The contestant has the burden of proving the existence of a

---

[6] "[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they perform part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."  28 U.S.C. §1367.

confidential relationship.  *In re Last Will and Testament of Garrett*, 856 So. 2d 742, 746 (Miss.

Ct. App. 2003).  A confidential relationship has been described by the Mississippi Supreme

Court as:

> [w]henever there is a relation between two people in which one person is in a
> position to exercise a dominant influence upon the other because of the latter's
> dependency upon the former, arising from either weakness of mind or body, or
> through trust, the law does not hesitate to characterize such relationship as
> fiduciary in character.

*In re Last Will and Testament of Garrett*, 856 So. 2d at 746 (quoting *Hendricks v. James*, 421 So.

2d 1031, 1041 (Miss. 1942)).  The following seven factors are used in order to determine whether

a confidential relationship exists:

> (1) whether one person has to be taken care of by others;
> (2) whether one person maintains a close relationship with another;
> (3) whether one person is provided transportation and has their medical care
> provided for by another;
> (4) whether one person maintains joint accounts with another;
> (5) whether one is physically or mentally weak;
> (6) whether one is of advanced age or poor health;
> (7) whether there exists a power of attorney between the one and another.

*Id.* at 747.  The parties do not dispute that Reed was of advanced age and in poor physical health,

since he had been diagnosed with terminal cancer.  The parties also agree that Suzuko and Ralph

were close friends of Reed who drove him to medical appointments and picked up prescriptions

for him, but disagree as to the amount of care that Suzuko provided to Reed after he was

diagnosed with cancer.  No joint bank accounts were held by Reed and either Suzuko or Ralph,

but Suzuko and Reed jointly rented a safe deposit box.

The evidence submitted by the parties demonstrates that Reed placed significant trust in

Suzuko and Ralph.  He told medical professionals that he considered them to be like his son and

daughter-in-law, and he entrusted them with his coin collection that was valued at approximately $12,000.  (Defendants' Mem. Br. in Opp. to Parnell's Motion at 10; Ralph Dep. at 38-46).  He provided them with information about his finances and investments.  (Suzuko Dep. at 25, 74, 96, 98).  He attended monthly and weekly gatherings of members of the Buddhist faith, some of which took place in Suzuko and Ralph's home, and asked Suzuko questions regarding the Buddhist faith.  (Suzuko Dep. at pp. 26, 33).  Suzuko acknowledged during her deposition that Reed generally did what she told him to do.  (Suzuko Dep. at p. 41).  The undisputed close relationship between Suzuko, Ralph, and Reed, and the significant amount of trust that Reed placed in Suzuko and Ralph lead this Court to conclude that a confidential relationship existed between Suzuko, Ralph, and Reed.  Therefore, a rebuttable presumption of undue influence arises automatically.  *Lancaster*, 927 So. 2d at 759.

Suzuko and Ralph can rebut the presumption of undue influence by demonstrating the following by clear and convincing evidence: (1) that they acted in good faith; (2) that Reed had full knowledge and deliberation of his actions and the consequences of those actions; and (3) that Reed exhibited independent consent and action.  *See Lancaster*, 927 So. 2d at 759.   The following five factors must be considered in determining whether Suzuko and Ralph acted in good faith: (1) determination of the identity of the initiating party in seeking preparation of the instrument; (2) the place of the execution of the instrument and in whose presence; (3) the consideration and fees paid, if any; (4) by whom paid; and (5) the secrecy and openness of the execution of the instrument.  *See id.*  The Court can consider Suzuko and Ralph's own testimony in determining whether the presumption has been rebutted.  *See id.*

Analyzing the factors for demonstrating good faith, Suzuko and Ralph have set forth

-13-

evidence, through the testimony of the Hancock Bank employees, that Reed initiated the purchase of the annuity, and no evidence to the contrary has been produced. The annuity agreement was undisputedly executed at the Hancock Bank branch located at the Armed Forces Retirement Home in the presence of Helwick and Madden, employees of Hancock Bank. Suzuko was sitting in her car outside the bank on one of the occasions that Reed discussed the transaction with bank employees, but Suzuko and Ralph assert that she was merely waiting to take Reed on an errand, an argument that is supported by the testimony of one of the Hancock Bank employees. (Madden Dep. at 7-8). All funds associated with the transfer were paid by Reed, and the agreement was executed in the presence of the two bank employees. Additionally, Ralph has testified that he informed the Armed Forces Retirement Home that Suzuko was a beneficiary of the annuity after Reed's death.[7] (Ralph Dep. at p. 68).

As for the requirement that Reed had full knowledge and deliberation of his actions and the consequences of those actions, Ralph and Suzuko have demonstrated that Reed consulted with Hancock Bank employees for over one month before deciding to move forward with the transaction. (Helwick Dep. at 27). Further, it has been demonstrated that the Hancock Bank employees discussed with him the fact that most people named family members as beneficiaries, and required him to take additional time to think about whether he wanted to move forward before allowing him to purchase the annuity and name Suzuko as beneficiary. (Helwick Dep. at pp. 5-8). The Hancock Bank employee also asked Reed if he wanted to reconsider his choice of

_____

[7]Ralph and Suzuko claim that they were unaware that Reed had purchased the annuity until they received paperwork from Allstate after his death. However, Parnell argues that Reed needed Ralph and Suzuko's social security numbers in order to name them as beneficiaries. Ralph and Suzuko have not provided any explanation of how Reed gained access to this information without their assistance.

beneficiary after hearing that Parnell had visited Reed, but Reed refused.  (Helwick Dep. at 79).

Finally, Ralph and Suzuko must demonstrate that Reed exhibited independent consent and action in purchasing the annuity and naming them as beneficiaries.  Ralph and Suzuko have submitted testimony from Madden, one of the Hancock Bank employees, that Reed was a very independent person and a "savvy" investor.  (Madden Dep. at 13).  She testified that he asked intelligent questions, and made his own choices concerning investment options that she presented to him.  (Madden Dep. at 13).

Less information has been provided concerning Reed' decision to give the proceeds of the sale of the coin collection to Suzuko.  Ralph testified that Reed asked him to keep the coin collection in his garage in approximately August of 2003, and asked him to sell the coins for him.  (Ralph Dep. at 36-37).  Ralph testified that he eventually agreed to sell the coins, and that Reed wanted him to give the proceeds of the sale to Suzuko.  (Ralph Dep. at 38-39).  The Armed Forces Retirement Home was not informed that Reed allegedly gave his $12,000 coin collection to Suzuko.  (Ralph Dep. at 67).   Parnell claims that she was not aware of the sale until after receiving discovery responses form Suzuko in this lawsuit.

Parnell relies upon *Madden v. Rhodes*, 626 So. 2d 608 (Miss. 1993), in support of her argument that Suzuko and Ralph have not rebutted the presumption of undue influence.  However, the *Madden* decision is distinguishable to the extent that the Court determined that no credible evidence revealed any knowledge or deliberation by the decedent regarding the disposition of his assets upon his death.  *Madden*, 626 So. 2d at 622.  In *Madden*, the decedent had placed several certificates of deposit and a safe deposit box containing a large sum of cash in his name and in the name of a hospice volunteer, so that she could assist him in handling his

-15-

affairs if necessary, but the Court found that there was no credible evidence that he intended for her to inherit the funds upon his death. *Id.* In the present suit, Ralph and Suzuko have presented testimony that revealed that Reed knew that the proceeds of the annuity would be given to Suzuko upon his death, and that he carefully considered his options before proceeding with the purchase.

Nevertheless, the *Madden* decision is instructive to the extent that there were possible ethical violations in the acceptance of large sums of money by the hospice volunteer who assisted the decedent and cared for his wife, who was suffering from terminal cancer. *See id.* at 621. In *Madden*, the Court indicated that the possible ethical violations were indicative of bad faith. *Id.* In the present suit, a volunteer of the Armed Forces Retirement Home and an employee of the Armed Forces Retirement Home were named as primary and contingent beneficiaries, respectively, of a large annuity purchased by a resident of the Home. Although Ralph and Suzuko dispute the assertion that Reed's gifts violated the Home's ethics rules, Ralph's own testimony reveals that he had serious concerns regarding whether it would be ethical for he or Suzuko to the accept gifts from Reed. (Ralph Dep. at 17-18, 68). Although this Court does not make any finding as to whether the ethics rules were in fact violated, the Court finds that the ethical implications of the gifts create a fact issue as to whether Ralph and Suzuko acted in good faith. Therefore, the Court finds that a genuine issue of material fact exists as to whether Ralph and Suzuko have rebutted the presumption of undue influence by clear and convincing evidence. As a result, Parnell is not entitled to summary judgment regarding her undue influence claim, and Ralph and Suzuko are not entitled to summary judgment with regard to Parnell's cross-claims or their assertion that Suzuko is entitled to the proceeds of the annuity.

-16-

**E.  WHETHER PARNELL IS ENTITLED TO THE PROCEEDS OF THE ANNUITY PURSUANT TO THE CHANGE OF BENEFICIARY FORM:**

Parnell argues that she is entitled to the proceeds of the annuity as a result of the Change of Beneficiary Form executed on the day of Reed's death.  However, Suzuko and Ralph argue that the Change of Beneficiary Form was signed as a result of undue influence exerted by Parnell. As explained previously, the existence of a confidential relationship creates an automatic presumption of undue influence.  *Lancaster*, 927 So. 2d at 759.  The Court finds that a genuine issue of material fact exists as to whether a confidential relationship existed between Parnell and Reed.  *See in re Last Will and Testament of Garrett*, 856 So. 2d at 747.  Although evidence has been submitted that Parnell and Reed did not have a close relationship, Parnell was Reed's daughter, and he was undisputedly suffering from severe physical weakness and was near death. He required the care of others although it is unclear how much care was provided to Reed by Parnell, and Parnell had a Power of Attorney.  No witnesses saw Reed sign the Change of Beneficiary form, other than Parnell.  Therefore, a genuine issue of material fact exists as to whether a presumption of undue influence should arise with regard to the signing the Change of Beneficiary Form.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the plaintiff, Allstate's Motion for Summary Judgment [90] is **GRANTED**.  Parnell's Counterclaim against Allstate is **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Allstate a Motion to Exclude the Proposed Expert Testimony of George B. Pickett [94] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary Judgment [92] filed by Virginia Parnell, Individually and as Executrix of the Estate of Reed

Thomas Reed, is **DENIED**.

  **IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [139] filed by Suzuko Marshall is **DENIED**.

  **IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [127] filed by Ralph Marshall is **DENIED**.

  **SO ORDERED AND ADJUDGED** this the 30th day of March, 2007.


        s/ *Louis Guirola, Jr.*
        LOUIS GUIROLA, JR.
        UNITED STATES DISTRICT JUDGE